# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAN GREENBURG,

    *Plaintiff,*

v.

    Case No. 12-2107-EFM

CASSIE CURE,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Dan Greenburg is suing Defendant Dr. Cassie Cure for damages resulting from a collision that occurred on a Kansas highway when a trailer detached from Cure's Suburban and crashed into Greenburg's car traveling in the opposite lane of traffic. Cure has filed two Motions for Partial Summary Judgment. In the first (Doc. 44), Cure asks the Court to find that Greenburg cannot recover damages for lost compensation based on the lost profits of the LLC he owns. In the second motion (Doc. 55), Cure asks for summary judgment that Cure was not responsible for the trailer's separation from her vehicle. Because Greenburg cannot use his LLC as a shield against liability and a sword to collect damages from others, the Court grants Cure's first motion for partial summary judgment. But because there are genuine issues of material fact for the jury to decide regarding the trailer's detachment from Cure's vehicle, the Court denies Cure's second motion for summary judgment on issues of liability related to that incident.

# I. Factual and Procedural Background[1]

Plaintiff Dan Greenburg seeks recovery for injuries he suffered when a trailer towed by Defendant Cassie Cure detached from her vehicle and struck Greenburg's in his legal lane of travel. Greenburg asserts that the trailer detached because the trailer hitch connection failed, and that the detachment and subsequent collision were the result of negligence by Cure.[2] Greenburg seeks damages for personal injuries and property damage in excess of $75,000. Greenburg is also claiming damages for lost income. In interrogatories, Greenburg listed his lost income as the equivalent of the lost profits of Diversified Sports Technologies, LLC. Greenburg is the sole member of that LLC, and has been since 2009.

The trailer that struck Greenburg belonged to Cure's father-in-law, Gail Cure ("Gail"). The trailer is a pickup truck bed that Gail converted into a trailer by adding steel and a tongue, and welding safety chains to that tongue. Gail and other family members had used the trailer in the past to haul items, and the trailer had never before detached from a vehicle. Cure asked Gail to attach the trailer to her car because he knew more about hitching the two items together and because the trailer belonged to him. Cure did not see Gail attach the trailer to her vehicle. Gail attached the trailer under the light of a street lamp, and he tested the connection by shaking it, kicking it, and bouncing it around. Gail then attached safety chains from the trailer to the right and left side of the area by the hitch ball on Cure's vehicle.

---

[1] In accordance with summary judgment procedures, the Court has set forth the relevant, uncontroverted facts in the light most favorable to the nonmovant, Greenburg.

[2] Cure's employer, D & C Enterprises, P.C. d/b/a Cedar Ridge Animal Hospital, was originally named as a defendant to the suit, but the Court granted Greenburg's motion to dismiss, without prejudice, the claims against D & C (Doc. 43).

Before she got in her vehicle the next morning, Cure looked at the connection as she passed it. She did not touch the connection. Other than asking Gail to connect the trailer and looking at the connection the following morning, Cure did not personally ensure the trailer was connected to her vehicle.

After leaving Gail's residence, Cure picked up her mother to take her to the hospital for surgery. In the time before the accident, Cure was driving in the southbound lane of Highway 26 in Cherokee County, Kansas. She did not swerve, cross the center line, or travel at an excessive speed. Cure states that she did not notice any problems or vibrations coming from the trailer before it detached. Cure had no warning that the trailer was going to detach from her vehicle, and she neither saw nor felt when the trailer did detach. According to a witness following behind Cure, the trailer detached after Cure drove onto a bridge. About halfway across the bridge, the trailer began to move from the southbound lane into the northbound lane of traffic. Neither Cure nor her passenger knew that the trailer had detached until Cure heard a noise and saw Greenburg's brake lights in her rearview mirror. Cure then began to slow down while her vehicle was still on the bridge to see what had happened.

The accident occurred at approximately 5:12 a.m., when it was still dark outside. The parties dispute whether Cure dimmed her high beam headlights in a timely manner. Greenburg alleges that Cure did not dim the lights until she was approximately 60 to 80 feet away. Greenburg saw the detached trailer a second after his eyes adjusted from the light. When Greenburg saw that the trailer had detached from Cure's vehicle, he either slowed or stopped his vehicle and squared up on the tongue of the detached trailer in an effort to avoid being flipped over the bridge or forced into oncoming traffic. The collision occurred at high speed.

After the collision, the hitch and ball of Cure's vehicle were still attached to the vehicle. The investigating officer, Deputy Gibson, photographed the safety chains still attached to Cure's vehicle. Gibson observed approximately 2.5 feet of safety chain hanging from the trailer hitch area of defendant's vehicle to the right side of the ball. After the parties documented the incident, Gail drove the trailer away attached to his truck, which has a ball the same size as the one on Cure's vehicle.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[5] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits.[7] The Court will not grant summary judgment "where there is reason to

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[7] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

believe that the better course would be to proceed to a full trial."[8] Moreover, summary judgment is rarely proper in actions for negligence.[9]

### III.   Analysis

Cure filed two motions for partial summary judgment on Greenburg's claims.  First, Cure argues that Greenburg cannot recover damages for lost compensation based on the alleged losses of the LLC that Greenburg owns.  Second, Cure asserts that the collision was an unforeseeable and unavoidable accident for which she was not liable.  The Court will address each motion in turn.

**A.    As a matter of law, Greenburg may not recover personal damages arising from his LLC's loss of profits.**

Cure argues that Greenburg cannot recover the LLC's lost profits because (1) an LLC is separate legal entity from Greenburg as an individual, and (2) even if the LLC were added as a party to the suit, the LLC has no legitimate legal interest in Greenburg's claims against Cure. Greenburg argues that, as the sole member of his company, the company's lost profits are the same as his lost compensation.  Greenburg also contends that Kansas law permits his recovery based on a 1950 case in which the Supreme Court of Kansas permitted a plaintiff to claim damages in an amount equal to the lost profits of a partnership he owned with his wife.[10]  The Court disagrees.

---

[8]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[9]     *Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008) (citing *Bacon v. Mercy Hosp. of Ft. Scott*, 756 P.2d 416, 419 (Kan. 1988)).

[10]    *See McCracken v. Stewart*, 223 P.2d 963 (Kan. 1950).

"A limited liability company is a hybrid of two basic business entities."[11] Although a limited liability company resembles a partnership due to its informality, the managers and members of LLCs enjoy the same protections from personal liability as corporations.[12] Specifically, "the Kansas Revised Limited Liability Company Act generally provides that an LLC's corporate liabilities in tort are solely those of the LLC and that no member or manager may be liable solely based on their status as a member or manager."[13]

Because LLC statutes "vary considerably from state to state," "generalizations about LLCs should be made with caution, and the provisions of the governing jurisdiction should be consulted."[14] Kansas state law has not addressed the specific question presented in this case—whether a plaintiff in a negligence action may personally recover as damages the lost profits of an LLC of which he is the sole member. The Tenth Circuit, however, has provided the following guideline for approaching issues regarding LLCs:

> Courts interpreting LLC statutes or agreements will generally focus on the particular aspect of the LLC giving rise to the problem, and then take guidance from the principles and precedent of the business entity (corporation or partnership) most analogous to the problem before it. For example, in [a case from Utah], the district court determined that the members of an LLC are

---

[11] *Shelter Mortg. Corp. v. Castle Mortg. Co., L.C.*, 117 Fed. App'x 6, 13 (10th Cir. 2004) (applying Utah's corporate law to interpret the Utah Limited Liability Company Act).

[12] *See* 1 Wm. M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 20 (Rev. ed. 2011) ("[A]n LLC resembles a corporation in that the liability of each and every member for the obligations of the company is limited to the member's contribution to the company's capital. However, an LLC is generally designed to lack certain characteristics of a corporation to avoid taxation as a corporation. An LLC resembles a partnership in its informality of organization and operation, internal governance by contract, direct participation by members in the company, and no taxation at the entity level."); *see also* Kan. Stat. Ann. § 17-7688 ("[T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.").

[13] *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1239 (D. Kan. 2008).

[14] Fletcher, *supra* note 12, at § 20.

protected from liability in much the same way as corporate shareholders. It therefore applied Utah corporate law in deciding whether the concept of "piercing the corporate veil" would apply to a limited liability company.[15]

Here, Greenburg is essentially attempting to pierce the corporate veil himself by arguing that, as the sole member, the LLC is Greenburg's alter ego. As the name implies, the corporate veil is a characteristic of corporations. Therefore, the Court can analogize the present circumstances to cases in which corporations and/or their directors and officers attempted to pierce the corporate veil for their own benefit.

In a case in the Fourth Circuit, the plaintiff brought suit against the defendant for injuries suffered in an automobile collision. The plaintiff did business through an incorporated entity of which he was the sole shareholder,[16] and the plaintiff's only source of income came from the corporation. The plaintiff argued that his injuries from the car accident hindered his ability to do business, requiring him to hire an additional salesman. The plaintiff sought damages from the defendant for the cost of hiring the additional salesman.[17] The Fourth Circuit affirmed the district court's exclusion of testimony regarding the corporation's expenditures related to the new salesman, stating: "A corporation is, of course, an entity separate and apart from its officers and stockholders, and where an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages."[18] Other courts have followed the Fourth Circuit's example and held that an

---

[15] *Shelter Mortg. Corp.*, 117 Fed. App'x at 13 (internal citations omitted).

[16] *Terry v. Yancey*, 344 F.2d 789, 790 (4th Cir. 1965). The plaintiff was initially the majority shareholder with one other individual owning a minority share, but the plaintiff bought out the minority shareholder six months after the accident. *Id.*

[17] *Id.*

[18] *Id.*

individual plaintiff may not recover damages allegedly incurred by a corporation as a result of the plaintiff's injury.[19]

Borrowing from this law concerning corporations, courts have begun to extend to LLCs the principle that the corporate veil cannot be pierced as an offensive tactic. In *Meyer v. Christie*, two individuals and their solely-owned LLC successfully sued their former partners in a joint venture agreement for tortious conduct and sought damages for lost profits and unreimbursed out-of-pocket expenses.[20] After the Tenth Circuit held that the LLC lacked standing to sue on one of the claims, the case was remanded to the district court to decide whether the individual plaintiffs could recover all of the jury's award for lost profits, which had been jointly awarded to the individual plaintiffs and the LLC.[21] Judge Murguia held that the individual plaintiffs could not recover on behalf of the LLC:

> The court has serious concerns about disregarding the corporate form in this situation. Generally, individual members hold certain interests in a limited liability company to do just that: limit their liability. The LLC should not be available as a shield from liability at times but be treated as immaterial when it is profitable to an individual managing member. Courts are often—and rightfully—skeptical of a request that a limited liability company be allowed to pierce its own veil when disregard of the entity would be advantageous to members. . . . [A]bsent caselaw directing otherwise, the court declines to set the precedent plaintiffs seek here, which would allow the individual sole owner/members of an LLC to use the form of the business organization as a shield from liability at times

---

[19] *See, e.g.*, *Johnesee v. Stop & Shop Co., Inc.*, 416 A.2d 956, 960–61 (N.J. Super. Ct. App. Div. 1980) (stating that the plaintiff could not recover damages for the amount that his corporate entity paid to another worker during plaintiff's absence because such damages, "if recoverable at all, could be claimed only by an action on behalf of the corporation"); *Benson v. Warble*, 255 N.E.2d 230, 234 (Ind. App. 1970) ("[A]dditional expenses incurred by a corporation by reason of a shareholder-employee's absence due to injury allegedly caused by a third person are not admissible as an element of damages in the shareholder-employee's action for personal injuries against a third person.").

[20] 2011 WL 2847463 (D. Kan. July 15, 2011).

[21] *Id.* at *2.

and then argue that its existence is immaterial at others when it would be profitable.[22]

Three other courts have also concluded that the members of LLCs cannot oscillate between piercing and enjoying the protections of the corporate veil at their convenience.[23]

In the case presently before the Court, having previously invoked the protection of the corporate veil by doing business as an LLC, Greenburg now asks the Court to disregard the distinction between himself and his LLC so that he may recover the LLC's lost profits as damages. Because corporations cannot voluntarily pierce their corporate veil for their own benefit, and recent court decisions have extended this principle to LLCs, the Court finds that the corporate veil of his LLC that protects Greenburg from personal liability also prevents him from personally recovering losses sustained by the LLC. Greenburg cannot, as a matter of law, submit a claim to the jury that he is entitled to damages for lost profits from the LLC.[24] Cure is therefore entitled to summary judgment on Greenburg's claim for recovery of his LLC's lost profits.

---

[22] *Id.* at *3 (internal citations omitted).

[23] *See Damon v. Groteboer*, ___ F. Supp. 2d ___, 2013 WL 1332009 (D. Minn. Mar. 29. 2013) (stating, in a case where the plaintiffs had formed an LLC and sought to personally recover damages sustained by the LLC, that "[w]hile the Court understands the economic reality that Mr. and Ms. Damon, as Damon Center's sole members, contributed all of the funds at issue, it will not allow the Damons to take advantage of the corporate form to limit personal liability while simultaneously ignoring the corporate form when doing so allows them to profit personally"); *In re Crowe Rope Industries, LLC*, 307 B. R. 1, 6 (Bankr. D. Me. 2004) (noting that under Maine law, "the standard for piercing the veil of a limited liability company is the same as it is for a corporation"); *Freedom Fin. Grp., Inc. v. Woolley*, 792 N.W.2d 134, 141 (Neb. 2010) ("[Plaintiff] may not attempt to use the corporate form of the LLC to shield itself from liability and then use the same corporate form as a sword to recover damages or enforce liability to the LLC.").

[24] The Court notes that nothing in this Order would prevent Greenburg from requesting damages for lost compensation based on a loss in his own personal earnings and not the lost profits of the LLC. *See Johnesee*, 416 A.2d at 961 (finding that although two married plaintiffs could not recover damages for economic losses suffered by their solely-owned corporation, they could recover damages in the amount of the husband's lost salary from the corporation). Under those circumstances, Greenburg would presumably be allowed to admit evidence of the LLC's lost profits as evidence of Greenburg's personal loss in income.

**B.	Partial summary judgment on liability is not appropriate because genuine issues of fact remain regarding the trailer's detachment from Cure's vehicle.**

Cure's second motion for partial summary judgment asks that the Court decide as a matter of law that Cure was not liable for the trailer's detachment from her vehicle. Cure contends that the collision was an unavoidable accident. Cure argues that there is no evidence that she knew or should have known that the trailer would detach and that any defect in the trailer or its attachment to her car must be attributed to Cure's father-in-law.

Greenburg argues that genuine issues of material fact exist as to (1) whether Cure inspected the connection between the trailer and her vehicle before driving; (2) whether Cure failed to promptly dim her high beams as required by law, thereby compromising Greenburg's ability to see the oncoming trailer; and (3) whether Cure was negligent per se in failing to ensure that the trailer had an adequate safety hitch in place to maintain a connection between the trailer and Cure's vehicle. Cure concedes that the jury must resolve conflicting accounts regarding Cure's use of her high beams, but argues that Greenburg cannot produce adequate evidence to support his other negligence claims.

The analysis of Cure's motion becomes fairly straightforward if the parties' arguments are recast in terms of the elements of negligence. To recover under a theory of ordinary negligence in Kansas, a plaintiff must prove (1) the existence of a duty of care, (2) that the defendant breached that duty, (3) that the plaintiff suffered an injury, and (4) that the defendant's breach was the proximate cause of the plaintiff's injury.[25] Whether a duty exists is a question of law for the Court; whether the defendant breached the duty is a question of fact for the jury.[26]

---

[25] *See McGee v. Chalfant*, 806 P.2d 980, 983 (Kan. 1991).

[26] *Nero v. Kan. State Univ.*, 861 P.2d 768, 772 (Kan. 1993) (citing *Honeycutt v. City of Wichita*, 839 P.2d 1128 (Kan. 1992)).

The existence of a duty is a threshold issue, and summary judgment is proper if the Court finds that the defendant did not owe the plaintiff a duty of care.[27] But the Court may not consider, on summary judgment, whether the defendant breached the duty of care.[28]

The arguments that Cure advances in her motion for partial summary judgment address breach of duty. To paraphrase Cure's arguments, Cure contends that there is no evidence that she was negligent because (1) she exercised reasonable care when driving; (2) although she was not the person who attached the trailer to the vehicle, she observed that the trailer was adequately attached before driving; and (3) once the trailer detached, there was nothing Cure could have done to prevent the collision with Greenburg's vehicle. These arguments pertain to the question of whether Cure breached a duty of care—they do not address whether she owed such a duty in the first place.

Cure's reply brief notes the distinction between duty and breach of duty before summarily stating that "there is no evidence that Defendant knew or should have known that the trailer would detach from her vehicle and/or result in the accident involving the Plaintiff, Defendant was under no duty to prevent it."[29] In other words, Cure argues that she did not owe Greenburg any duty because the collision was not foreseeable. Greenburg, in turn, argues that Cure owed a duty of reasonable care and the issue of foreseeability pertains to the jury's consideration of breach of duty.

---

[27] *Id.* ("Without a duty, there can be no breach to support a plaintiff's claim.").

[28] *Id.* (citation omitted).

[29] Def. Reply, Doc. 59, at 11.

The confusion regarding the proper role that foreseeability plays in negligence actions is, unfortunately, both common and confusing.[30] It is true that foreseeability pertains to duty in that a defendant owes no duty to protect others from unforeseeable consequences of the defendant's actions.[31] But "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm," and it is only in exceptional cases that no such duty is present.[32] Separate from the question of duty, foreseeability is more often an issue of fact for the jury to consider when deciding whether the defendant exercised reasonable care to prevent probable risks of harm to others.[33] Because foreseeability, in the context of breach, will depend on the specific facts of the case, the Restatements clearly caution that "courts should leave such determinations to juries unless no reasonable person could differ on the matter."[34]

Here, Cure undoubtedly owed a duty to Greenburg and every other driver whom she encountered on the road. Towing a trailer on a public road gives rise to a risk of physical harm

---

[30] *See, e.g.*, Mike Steenson, *The* Domagala *Dilemma—*Domagala v. Rolland, 39 Wm. Mitchell L. Rev. 633, 652–55 (2013) (discussing the confusion that arises from the fact that a judge may find that the defendant owed a duty because harm was foreseeable, but the jury, when considering the issue of breach, may come to the conclusion that a defendant did not breach that duty because the harm was *not* foreseeable).

[31] The seminal torts case of *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 99 (N.Y. 1928), provides an example of this use of foreseeability, although the case discussed the principle in terms of proximate cause. In that case, railroad employees pushed a passenger onto a train to prevent him from falling off, and the passenger dropped a wrapped package that contained fireworks. The fireworks exploded, knocking over scales on the platform, which injured the plaintiff. Writing for the court, Benjamin Cardozo found no negligence on the part of the railroad because "there was nothing in the situation to suggest to the most cautious mind that the parcel wrapped in newspaper would spread wreckage throughout the station." *Id.* at 101. Cardozo noted that the result would be the same even if the railroad employees had intentionally thrown the package to the ground, because it was not foreseeable to the employees that the package would explode and cause the scales to fall on the plaintiff. *Id.* at 100. That case is distinguishable in that Cure had reason to know that if she did not secure the trailer to her vehicle, it would detach and cause injury to other motorists.

[32] Restatement (Third) Torts: Physical & Emotional Harm § 7 (2010).

[33] Restatement (Third) Torts: Physical & Emotional Harm § 7 cmt. j (2010) ("In order to determine whether appropriate care was exercised, the factfinder must assess the foreseeable risk at the time of the defendant's alleged negligence.").

[34] *Id.*

to others, and one such risk is that the trailer may detach from the vehicle and cause a collision.[35] Cure therefore owed a duty to Greenburg to exercise reasonable care to prevent all foreseeable risks of harm stemming from her towing of the trailer, including a duty of ordinary care to ensure the trailer did not detach from her vehicle.

Cure argues that summary judgment is nonetheless appropriate because this case involves an unavoidable accident. According to the Restatement:

> An "unavoidable accident" is one that the actor could not have avoided by exercising reasonable care. . . . In negligence cases, there is no properly separate doctrine of unavoidable accident, and it does not serve as an affirmative "defense." The "doctrine" is merely a repetition of the general rule that an actor is not liable for harm unless the harm was caused by the actor's failure to exercise reasonable care.[36]

Therefore, by arguing that the collision was an unavoidable accident, Cure is essentially arguing that she did not breach her duty of reasonable care. Unless Cure can show that no reasonable person could find a breach of duty, that issue should be left to the jury. As Greenburg notes in his response brief, Cure stated in her deposition that she conducted no inspection of the connection between the trailer and her vehicle save looking at it as she walked by to get in the vehicle.[37] A juror may conclude that this once-over was insufficient to constitute reasonable care. Additionally, the issue of whether Cure dimmed her high beams in a timely manner—an issue the parties both concede is in dispute—may be relevant in that it could influence the jurors' thoughts about the general level of care with which Cure operated her vehicle.

---

[35] In fact, there are numerous examples in Kansas of lawsuits against drivers whose trailers detached and caused injuries to other motorists. *See, e.g.*, *Seely v. Chambers Plastering & Exterior Coating, Inc.*, 993 F. Supp. 1381 (D. Kan. 1998); *Wilkerson v. Lawrence*, 391 P.2d 997 (Kan. 1964); *Whitby v. One-O-One Trailer Rental Co., Inc.*, 383 P.2d 560 (Kan. 1963); *Disidore v. Mail Contractors of America, Inc.*, 2001 WL 506838, at *2 (D. Kan. May 9, 2001).

[36] Restatement (Third) Torts: Physical & Emotional Harm § 6 cmt. g (2010).

[37] *See* C. Cure Dep. (Pl.'s Ex. D), Doc. 58-4, at 3.

Furthermore, Greenburg has asserted that Cure failed to provide an adequate safety hitch connecting the trailer to the vehicle, a violation of Kan. Stat. Ann. § 8-1907(a), thereby subjecting Cure to liability for negligence per se. To recover under a theory of negligence per se, Greenburg must prove (1) that Cure violated section 8-1907(a), (2) that the violation caused Greenburg's injuries, and (3) that the statute provides a private right of action.[38] Cure argues that Greenburg cannot seek liability on a negligence per se theory because there is no evidence that the Kansas legislature intended to provide a private cause of action for the violation of section 8-1907(a). The Court disagrees. According to the historical notes for section 8-1907, that statute replaced a 1949 law that was numbered section 8-5,118. The relevant language of section 8-5,118 was identical to that in section 8-1907(a), and in 1959, the Supreme Court of Kansas recognized a private right of action for violations of section 8-5,118.[39] It follows, then, that the legislature's enactment of a statute with identical language would also provide a private cause of action. Whether Cure violated section 8-1907 by failing to provide an adequate safety hitch and whether such violation caused Greenburg's injuries are disputed questions of fact for the jury to resolve.[40]

For the foregoing reasons, the Court must conclude that a reasonable juror could find that Cure breached her duty to exercise reasonable care. Summary judgment on the issue of liability for the detachment of the trailer is therefore inappropriate.

---

[38] *See Seely*, 993 F. Supp. at 1383–84.

[39] *Crete v. Chicago, R.I. & P.R. Co.*, 337 P.2d 1003, 1011 (Kan. 1959) (recognizing a private right of action under section 8-5,118, but finding that the statute did not apply to traffic on private property).

[40] As previously noted, the jury could find that Cure did not adequately inspect the connection, and deposition testimony from her father-in-law is unclear as to the quality of the chains that connected the trailer to the vehicle. *See* G. Cure Dep. (Pl.'s Ex. E), Doc. 58-5, at 3.

**IT IS ACCORDINGLY ORDERED** this 24th day of April, 2013, that Defendant's Motion for Partial Summary Judgment (Doc. 44) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment on Liability Issues with Regard to Detached Trailer (Doc. 55) is hereby **DENIED**.

**IT IS SO ORDERED**.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE